**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES JAMISON,

    Plaintiff,

v.

STUART LIPPMAN AND ASSOCIATES, et al.,

    Defendants.

Case No. 1:21-cv-50

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Proceeding pro se and *in forma pauperis*, Plaintiff James Jamison initiated this lawsuit on January 21, 2021 against Defendants Stuart Lippman and Associates and Roxanna Jimenez, alleging that the Defendants violated the Fair Debt Collection Practices Act ("FDCPA") when they sought to collect $6,388.61 and took actions that resulted in the suspension of Plaintiff's driver's license by the Ohio Bureau of Motor Vehicles. On April 5, 2021, in lieu of an answer, Defendants filed a motion to dismiss. The undersigned now recommends that Defendants' motion be **GRANTED**.

    **I.**     **Standard of Review**

Defendants' motion seeks dismissal on multiple grounds under Rule 12(b), Fed. R. Civ. P. In evaluating the pending motion under Rule 12(b)(6), this Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327,

336 (6th Cir. 2007). At the same time, this Court

> need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true. *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000). To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory. *Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir. 2005), *cert. denied*, 547 U.S. 1111, 126 S. Ct. 1911, 164 L.Ed.2d 663 (2006).

*Id.*, 508 F.3d at 336–37. While the determination of whether Plaintiff's allegations state any claim rests primarily upon the allegations of its complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (internal quotation and citation omitted). Here, both the allegations contained within the body of Plaintiff's complaint and his attached exhibits are considered by the undersigned.

## II. Facts Alleged in Complaint[1]

On November 8, 2020, Plaintiff was involved in a two-car automobile accident. The driver of the other vehicle was insured by Geico Insurance.[2] The property damages from the accident totaled $6,388.61. Plaintiff alleges that a police report written at the time of the accident was "incorrect and wrong and inaccurate" because it indicated that Plaintiff was at fault in the accident. (Complaint at 1).[3]

The alleged error in the police report led to additional errors that ultimately gave

---

[1]Pursuant to the operable standard of review, and solely for purposes of the pending motion, all facts alleged in the complaint are accepted as true.
[2]An exhibit to Plaintiff's complaint identifies the insurer's name as "Geico-Midwest"; the precise name of the insurer is not material to disposition of the pending motion.
[3]Plaintiff has paginated a handwritten complaint attached to the pro se complaint form used in this Court. The page references are to Plaintiff's pagination.

2

rise to this lawsuit. The Geico claims adjuster relied upon the police report instead of contacting those involved. Based upon the police report, Geico sought recovery of the damages it had paid to its insured through its subrogation rights. Geico hired Stuart Lippman and Associates (hereinafter "SLA")[4] to recover those damages, and Plaintiff thereafter received a letter from SLA seeking reimbursement of the $6,388.61 claim.

Upon receipt of the letter, Plaintiff contacted SLA through the telephone number listed and spoke with Defendant Jimenez, who identified herself as a debt collector seeking to collect the $6,388.61. (Complaint at 2). Plaintiff informed Jimenez that he was disputing both the damages claim and the assignment of fault for the accident. (*Id*.) However, Defendant Jimenez "told the plaintiff that she will be submitting documents to the BMV to have your license suspended for failing to pay the car damage debt." (*Id*., capitalization corrected). Plaintiff made several additional calls to SLA, each time speaking with Defendant Jimenez (and eventually her supervisors) and receiving similar information – that SLA was working for Geico to obtain reimbursement of the claim/debt allegedly owed by Plaintiff, a debt that Plaintiff disputed. Jimenez and/or her supervisors also repeated the statement that SLA would be submitting paperwork to the Ohio Bureau of Motor Vehicles ("BMV").

Plaintiff subsequently learned that Defendant(s) had in fact submitted documents to the Ohio BMV on December 7, 2020.[5] Plaintiff alleges that Jimenez advised him that

---

[4]Plaintiff uses several spellings (with and without a hyphen) for the first portion of Defendant's name (i.e., "Stuart Lippman" or Stuart-Lippman"). Although the entity structure is not identified in the caption of the complaint, Plaintiff issued a summons to "Stuart Lippman and Associates, LLC." As discussed below, Defendant argues that a defect in service exists due in part to an incorrect name on the summons.
[5]Exhibit A to Plaintiff's complaint is a letter dated December 7, 2020 from SLA to the Ohio BMV. The letter states that SLA represents Geico-Midwest, that a reimbursement was paid to Geico's insured in the amount of $6,388.61, and that repayment has not been received "from the uninsured or at-fault party." *Id.*

3

his and/or his sister's licenses would be suspended by the BMV because Plaintiff and his sister's vehicle had been involved in an accident in which Plaintiff had failed to provide proof of insurance.

Plaintiff alleges that he actually was insured at the time of the accident but did not disclose his insurance information to Defendant Jimenez or SLA because he was disputing liability. During his repeated conversations with Defendants, Plaintiff verbally complained that he believed their actions in sending documents to the Ohio BMV violated the FDCPA. In response, Defendants insisted that "they are required to send notice to the BMV of uninsured motorists," despite Plaintiff's protest that he was in fact insured at the time of the accident. (*Id.* at 7).

After numerous unproductive calls with SLA, Plaintiff made contact with the Geico Insurance Claim adjuster. (Complaint at 11). Thereafter, Geico conducted a further investigation. Ultimately, the claims adjuster agreed with Plaintiff that the police report was incorrect, and that Plaintiff was not at fault. (Doc. 3 at 12). The adjuster further determined "that the driver of the 2013 Toyota Prius is to be 100 [%] liable for the accident." (*Id.*) Having determined on January 7, 2021 that Plaintiff was not at fault and therefore did not owe on the claim, the adjuster "recalled and closed the account," formally acknowledging that Plaintiff "was not liable to pay for the car damages of 6,388.61." (*Id.* at 13).[6] By that point in time, however, Plaintiff and his sister had both received notices of suspension from the Ohio BMV,[7] and Plaintiff had filed formal complaints against SLA with the Consumer Financial Protection Bureau ("CFPB") and the State Attorney General

---

[6]*See* Complaint, Doc. 3, Exhibit E.
[7]*See* Doc. 3, Exhibits B and C.

4

for what Plaintiff believed to be violations of the FDCPA.[8]

Plaintiff complains that "he had to appeal his and appeal his sister['s]….driver license suspension" because of the police report error, first accepted by Geico insurance, and ultimately by Defendants in attempting to collect on Geico's subrogation rights. (Complaint at 13-14). Although Plaintiff states that he submitted proof that he was insured to the BMV, he complains that the BMV is "trying to make the plaintiff and his sister…pay reinstatement fees for a car accident" for which Plaintiff bore no responsibility. (*Id*. at 13). Plaintiff seeks to recover millions of dollars in compensatory and punitive damages from SLA and Jimenez, based upon alleged violations of the FDCPA including their notice to the Ohio BMV.

### III. Analysis of Defendants' Motion to Dismiss

Defendants seek dismissal of this case based upon alleged defects in service, an alleged lack of personal jurisdiction over Defendant Jimenez, and because the complaint fails to state a claim as a matter of law. The undersigned agrees that the complaint fails to state any claim under the FDCPA, and finds no need to reach the alternate issues concerning defects in service or personal jurisdiction over Defendant Jimenez.

#### A. Failure to State a Claim Under the FDCPA

A claim under the FDCPA requires the existence of a particular type of "debt," defined as "any obligation or alleged obligation of a consumer to pay money arising out

---

[8] In SLA's response to the CFPB complaint, SLA explains (as it argues here), that "the FDCPA does not apply to the collection of insurance subrogation debts arising out of tort claims because they do not arise out of a consumer credit transaction." (Doc. 3, Exhibit G). SLA's response further states that after being notified on January 7, 2021 by Geico-Midwest that the police report contained incorrect information and that Plaintiff was not the responsible party, SLA "notified the DMV and submitted a 'retraction notice,'" a copy of which was provided to Plaintiff. *Id.*

5

of a transaction" that is "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5)). In this case, Defendants argue persuasively that Plaintiff has failed to state any claim as a matter of law, because the "debt" that Defendants sought to recover falls outside the scope of the FDCPA.

Tort-based subrogation claims, like the claim that SLA sought to collect here, simply are not debts that arise out of a voluntary consumer "transaction" under the FDCPA. "To maintain an action under the FDCPA, the Sixth Circuit clearly teaches that the debt at issue must arise out of a consumer transaction involving primarily personal, family, or household purposes." *Meyer v. Credit Collection Servs.*, 2013 WL 84929, at *2 (N.D. Ohio Jan. 7, 2013) (citing *Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012)). "By the plain terms of the statute not all obligations to pay are considered 'debts' subject to the FDCPA. Rather, the FDCPA may be triggered only when an obligation to pay arises out of a specified 'transaction.'" *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (quoting 15 U.S.C. § 1692a(5)).

*Hawthorne* is the seminal case on this issue. As here, in *Hawthorne,* the plaintiff was involved in a car accident allegedly resulting from her negligence. *Id*., 140 F.3d at 1369. Liberty Mutual insured the other party and, after paying the insured's claim, provided Mac Adjustment with subrogation rights for the amount it claimed Hawthorne owed. *Id*. Hawthorne then sued Mac Adjustment alleging violations of the FDCPA in its attempts to collect the subrogation claim. *Id.* The trial court granted Mac Adjustment's motion for judgment on the pleadings. The Eleventh Circuit affirmed holding, "Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an

6

accident does not arise out of any consensual or business dealing, plainly it does not constitute a 'transaction' under the FDCPA. . . . Consequently, the FDCPA does not apply[.]" *Id*. at 1371. The court went on to state "[q]uite simply, Hawthorne's alleged obligation to Mac Adjustment does not arise out of a consumer transaction; it arises from a tort. . . . Thus, we hold that the district court properly granted judgment on the pleadings for Mac Adjustment." *Id*. at 1371-72.

Although the Sixth Circuit has not published a decision squarely on point, scores of courts throughout the country including multiple courts within the Sixth Circuit similarly have defined the scope of the FDCPA to exclude tort-based subrogation claims. For example, in *Lynch v. Hommell*, 2018 WL 2717289 (N.D. Ohio June 5, 2018), the plaintiff alleged that the defendant had engaged in illegal collection activities under the FDCPA. Like Plaintiff here, the plaintiff in *Lynch* specifically alleged that the defendant notified the Ohio BMV that the plaintiff was responsible for the accident, and the plaintiff's driver's license was later suspended as a result of that notification. Following *Hawthorne*, the court dismissed plaintiff's case with prejudice. *Id*. at *6 ("Because [plaintiff's] alleged obligation arises from tortious conduct, rather than a transaction 'primarily for personal, family or household purposes,' it fails to qualify as 'debt'"); *accord Meyer*, 2013 WL 84929 at *3 (dismissing claim against the crash victim's insurer to recover for tortious act, since "debt" for tortious act and collection actions "are beyond the scope of the FDCPA."); *Foster v. Amarnek*, 2014 WL 1961245, at *5 (M.D. Tenn. May 14, 2014); *Taylor v. Javitch, Block & Rathbone, LLC*, 2012 WL 2375494 (N.D. Ohio June 22, 2012) (subrogation pursued by a collection agency to collect on a judgment arising from a motor vehicle

7

accident was not a covered consumer debt under the FDCPA).  Although the undersigned sympathizes with Plaintiff's situation and believes that Defendants could have done a better job responding to Plaintiff's allegations of an error, because the statutory language is clear and the body of case law interpreting it is highly persuasive, the undersigned concludes that Plaintiff cannot state a claim as a matter of law.  Accordingly, this case should be dismissed under Rule 12(b)(6).

### B. Alleged Defects in Summons and/or Service

Defendants present several alternate bases for dismissal under Rule 12(b)(2), (b)(4) and (b)(5).  The undersigned finds no need to review these alternate bases for dismissal at any length, but will summarize them briefly.

Based upon Plaintiff's *in forma pauperis* status, the Court directed the U.S. Marshal to serve Defendants on Plaintiff's behalf as directed by Plaintiff. (Doc. 2).  Plaintiff completed the summons forms and U.S. Marshal service forms provided to him by the Clerk of Court.  Defendants now argue that the summons forms contain several omissions and defects that render service defective.[9]  In addition, Defendants assert that the type of mail service used by the U.S. Marshal is not authorized under Arizona law.[10]

In response, Plaintiff argues that he completed the forms to the best of his ability and "did his part as to the summons and the U.S. Marshal Forms once the Plaintiff was

---

[9]Specifically, Defendants complain that the fields on the summons form that are intended to identify the Court's name and the Plaintiff's name and address are both left blank, that the summons to the entity is directed to "Stuart-Lippman and Associates LLC" rather than to "Stuart-Lippman and Associates, Inc."

[10]Defendants declined to waive service. The U.S. Marshal attempted service by certified mail to the corporate headquarters as directed by Plaintiff, which was signed for by an employee identified as Eric Chalberg.  Mr. Chalberg is not an officer or agent authorized to receive service on behalf of SLA. *See generally*, Fed R. Civ. P. 4(h); Ariz. R. Civ. P. 4.1(i).  Similarly, Defendants point out that Plaintiff attempted to serve individual Defendant Jimenez at her place of work, instead of at her residence.  *See* Rule 4(e), Fed. R. Civ. P. and Ariz. R. Civ. P. 4.1(m).

8

granted [leave] to proceed without payment." (Doc. 12 at 4). However, Defendants point out that defects in service are not excused based upon a litigant's pro se status. Still, the undersigned would be reluctant to dismiss Plaintiff's complaint solely on the basis of the referenced defects, without (at a minimum) giving Plaintiff the opportunity to correct the alleged omissions and defects.

In addition to the alleged defects in service, Defendant argues that this Court lacks personal jurisdiction over Defendant Jimenez in Arizona, based upon Plaintiff's failure to allege sufficient contacts by Jimenez with the State of Ohio. According to the Complaint, all of Jimenez's contacts with Plaintiff arose from Plaintiff's calls from Ohio to SLA in Arizona. Plaintiff argues that the fact that Defendant Jimenez sent "letters" to Ohio should be sufficient to establish her minimum contacts with the State of Ohio. (Doc. 12 at 8-9). But as Defendants point out in their reply, the only letters identified in the complaint are those sent by SLA to the Ohio BMV. In a surreply (Doc. 14),[11] Plaintiff alleges that because Defendant Jimenez admitted that she was the one who sent the letter to the BMV, she should be subject to this Court's jurisdiction. (Doc. 14 at 8-9). However, the undersigned agrees with Defendant that such a tenuous relationship would not appear to support the exercise of personal jurisdiction over Jimenez under Ohio's long-arm statute or under the Due Process Clause. (*See generally*, Doc. 11-1 at 6-10).

---

[11] Plaintiff filed the surreply without leave of Court. (Doc. 14). He attempted to remedy his error by filing a motion seeking leave to file his surreply. (Doc. 15). Defendants filed a response in opposition and moved to strike the unauthorized surreply. (Doc. 16). Plaintiff filed a response to the motion to strike, (Doc. 17), to which Defendants filed a reply. (Doc. 18). Plaintiff also filed what is construed as a reply in support of his motion to file a surreply. (Doc. 19). Both parties' motions are addressed by separate Order.

9

## IV. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** Defendants' motion to dismiss (Doc. 11) be **GRANTED** and that this case be **DISMISSED** with prejudice for failure to state a claim.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JAMES JAMISON,

    Plaintiff,

v.

STUART LIPPMAN AND ASSOCIATES, et al.,

    Defendants.

Case No. 1:21-cv-50

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

11